Good morning, Your Honor. It's Donald Cook for Plaintiff Mr. Ejigu. The issue here is whether Mr. Ejigu can sue for a Duluth-type cover-up. We know that in the underlying lawsuit Counsel, if I can just stir up you for a second. I have great empathy for your client and what happened to him, but at the time he reached a settlement with the City of Los Angeles, he knew full well, did he not, that there had been a cover-up? Oh, yes, absolutely. So he knew that, absolutely. Nonetheless, he signed a general release including a Civil Code Section 1542 waiver. He went before the City Council of LA. He was represented by counsel. Counsel, if this case can be opened again, can there ever be a general release and settlement of a lawsuit with a public entity? Well, yes, there can be. How? It has to be claims that have accrued, whether known or unknown, as of the date of the settlement. That's what 1542 is all about, isn't it? Right. This claim had not accrued as of the date of the settlement. That's Morales v. City of Los Angeles. A cover-up claim does not accrue until there's a final order entered in the underlying case. So you're telling me that if your client, who you've admitted and I think the record is clear, knew absolutely there was a cover-up, he knew it? Oh, yes. He alleged it, he said it in court, everybody talked about it, and then he says, I know this, but I'm going to settle with you and I'm going to waive any known and unknown rights, and when I get all done with it and I get my check, I'm going to file a suit and I'm going to charge you with covering this up. That's what this case is about, isn't it? Well, it is about the cover-up, but you're focused on the settlement agreement. Of course I am. That's what settlement agreements are all about, right? The district judge didn't reach the settlement agreement. That's correct. He ruled judgment on the pleadings that you just don't have a cause of action. Correct. And I think the reason he didn't get to the settlement agreement is because, as we pointed out in opposition, that the agreement was quite clear, both the February agreement and the April agreement, that it was limited to claims, both known and unknown, as of the date of those agreements. Well, the cover-up claim cannot accrue as a matter of law. We cannot even bring it in the underlying lawsuit. Are you asking us, if I understand your position correctly, what you want us to do is go back and say you can't, Judge Anderson, decide this case on a judgment of the pleadings. What you need to do is somehow on summary judgment, whatever, then consider whether the settlement agreement encompassed this claim one way or the other. He may or may not find that it's covered. Well, that would certainly be a backup position. I believe from the face of the agreement itself, when you read it, when it specifically refers to, again, known or unknown claims as of the date of the agreement, that necessarily excludes the cover-up claim. Maybe you're right. Maybe you're wrong. If it's ambiguous, then extrinsic evidence would be admissible. Oh, absolutely. Judge Anderson would have to decide whether this was within the ambit of the agreement or not. That's correct. That's our fallback position. And I go back to the original February settlement negotiations where we were both ---- What's your fallback position? What's your main position? Well, my main position is the settlement agreement is irrelevant because it could not ---- it did not include the cover-up claim. Well, suppose the agreement says that includes cover-up claims. Well ---- I mean, it's for Judge Anderson to decide what's within the scope of that agreement. Well, I would agree if one could look at the agreement. If one looked at the agreement and said, I think it could include the cover-up claim, then my argument would be, look, then you have to look at the parole evidence and the parole evidence ---- But this was a judgment on the previous motion, so it wasn't in front of him. That's correct. The agreements themselves were in front of him. I mean, he had them in front of him, but he did not take any parole evidence. He did not discuss it, didn't touch it, and ---- Why would parole evidence be admitted when everything is contained within the four walls of the settlement agreement? Well, first of all, there's no integration clause in the April settlement agreement. Secondly, as in the Trident decision by this circuit, I think it was Judge Kavinsky started off by pointing out under California law, there is essentially no way to exclude parole evidence. You can use parole evidence to ---- First of all, parole evidence is admissible to show. Parole evidence is admissible to resolve an ambiguity. Secondly ---- Where's the ambiguity in this case? Well, if I can just finish my point. Okay. Parole evidence is admissible to show that there is also an ambiguity, even though the agreement may appear clear on its face. That's California law, and that's the Trident decision from this court explaining and incidentally criticizing California law for that very point. Now, the ambiguity I would submit that exists is when we had these negotiations in February of 06, we all knew that there had been a cover-up, et cetera, and that's why I put in language in the handwritten agreement that this is limited to claims accrued as of this date. I had litigated the Morales case. I knew the rule. Why counsel did you not simply say to the trial judge, I'm going to, you know, I reserve my right to appeal on this thing. I'm going to do everything I can in this case in chief. I'm going to take it up. I'm going to explore this. I'm going to find out who these cops were that covered this up and do it that way. Isn't that the way that this should have been done? It was certainly an option. I don't believe it was what had to be done. If you had to do it all over again, how would you do it? Probably the same way.  It didn't compensate us fully. I mean, they had leverage on their side, obviously, because we didn't have the right people in the lawsuit. But you knew you didn't have the right people. But I couldn't bring them in. And this wasn't any different than in the Deleu versus Wagner case, right? While that underlying case was going, the plaintiffs there realized that the police had suppressed evidence, and they filed the lawsuit. Isn't that a compelling argument to a court of appeal that there was an abuse of discretion on the part of the trial judge because he wouldn't let you get evidence in about the people who really did this? Compelling arguments on abuse of discretion to appellate courts, I've not found them very easy to make, just because of the standard of review on abuse of discretion. And that's the reason why. You think that's an easier one than a settlement agreement? Well, as I say, I think it's easier to, when you did make a substantial offer, to accept the offer and pursue the cover-up claim, when, again, when you read the law, the law is clear. I couldn't bring the cover-up claim in the underlying lawsuit. I had to wait until the resolution of the first lawsuit, and then you sue for the cover-up claim. Counsel, the district court determined that there was no causal link between the alleged conspiracy and your client's inability to timely name his attackers because of dilatory discovery. How do you address that point? Well, I go back, first of all, to what Judge Anderson said in the underlying lawsuit when I brought in the first group of officers, where he spelled out in some detail how diligent plaintiff had been in trying to identify the officers, both before the lawsuit was filed, I made a public records request and gave me information, and then I tried to get discovery responses before the scheduling conference, so he delayed. I took a designated agent deposition. They couldn't really tell me who it was. I got a group of records from which I concluded, mistakenly, as it turns out, but quite reasonably, that I had the officers, and I quickly went into court to bring them in. But what would make him change his view about that, then? Why would he think that the reason that your client was unable to name his attackers was because discovery wasn't done in time to identify them? Because it just so happened, by the time that I found out we had the wrong group of officers, thinking we had the right group of officers the whole time, the discovery cutoff had passed, and apparently it was Judge Anderson's view that I should have figured that out, that in fact I had the wrong group of officers before the discovery cutoff had passed. And I submit that was just very unfair on his part. But was it an abuse of discretion, or was it legal error? Were I appealing that from the underlying lawsuit, I would certainly be making that argument that it was an abuse of discretion, because you look at the record. But that doesn't change the fact that what we had here was misconduct, very serious misconduct by city officials that had the effect. I understand. But the problem is that you have to show that that conduct is what caused your client's inability to identify them. And the district court said that wasn't what caused the inability. The misconduct notwithstanding, if the discovery had been diligent, the identities would have been disclosed when you did the depositions that you finally took, to show that those were not the proper people. So that's the problem I have. The district court found that there was no cause and link. First point, approximate cause. We're really talking approximate cause issue I submit here. Approximate cause is typically a question of fact. Approximate cause is not limited to a sole cause. There can be multiple approximate causes of a wrongful act. So that's my first response. And my second response is I would go back to Judge Anderson's September 06 order in the underlying case. It's quoted at page 13 to 14 of the reply brief where he talks about Plankett's diligence as of that point. And I know I'm 30 seconds over my allotment. If I may have a few seconds for rebuttal. Thank you. For the city, please. Good morning, Your Honors. Lisa Berger, deputy city attorney for the city. Good morning. There are clearly two issues here. One is, as Judge Rollenton pointed out, the substantive matter of whether or not the plaintiff stated a cause of action, and the other is whether or not it was waived by the signing of the settlement agreement. And as you know, the city believes it is in the right on both of those issues. Starting with the settlement agreement, counsel keeps referring to how this somehow, the settlement agreement only applied to the allegations in the legal allegations in the complaint. Well, the settlement agreement says that it settles this lawsuit that's being settled that involves the claims of damages arising from the false arrest, imprisonment of Plankett on February 15, 2003, at or near Sunset Boulevard and Highland Avenue in the city of Los Angeles. It is possible, isn't it, to read that to mean the settlement agreement only covers what happened in the street that day, February 15, at Sunset Boulevard and Highland? Well, that would be contradictory with the language that is found on page 48 of the excerpts, where it releases the defendants from any and all liability in connection with the events alleged in the lawsuit, from any and all past, present, or future claims. Okay. That's one way to read it. Another way to read it is that it's only arising from the claims asserted in the above-mentioned civil complaint, case number CV051146PA. If it's ambiguous, aren't they entitled to put on extrinsic evidence? Well, I would disagree that it's ambiguous. Okay. You disagree, but if I agree it's ambiguous, isn't it? Wouldn't they be entitled to put on extrinsic evidence? Yes. Parole evidence is admissible to show the ambiguity and to help the ambiguity be interpreted, but the case law also says that it will not be admissible when the attempted interpretation is contradictory to the actual language of the settlement agreement. It's not possible to read that as limiting the claims, limiting what's settled to damages arising from the false arrest, imprisonment of plaintiff on February 15, 2003, on or near Sunset Boulevard and Highland Avenue in the City of Los Angeles, limiting it to what happened that day? It refers to damages or injuries sustained arising from the claims asserted in the above-mentioned complaint. Okay. That's one way to read it. I grant you. You can read it your way. You can also read it my way. With all due respect, Your Honor, I think that you would have to be wearing blinders to take just the few words you're looking at. I will not take that personally. In any event, Judge Anderson never reached the settlement agreement. Is that right? That's correct. Okay. Shouldn't he get the first crack at what the settlement agreement covers? I think that if it's clear as a matter of law and can't be interpreted any other way, this Court can make that finding. Assume that at least two of the judges don't agree with you on that. All right. Then turning towards the substantive issues, the complaint does not allege facts that would meet the standards for denial of access. There is no allegation that the facts do not show any intentional conduct with the intent to deprive the plaintiff of his ability to go to court, which is, I mean, there was never any cover-up of the fact that there was a demonstration, the fact that he was arrested, the fact that he was injured. At most, what was not discovered were the identities of the officers. Due to a cover-up. We assume that the allegations in the complaint are true. The city thwarted the plaintiff's efforts to discover the identity of the people who actually broke his arm. Well, I think that you would have to also have some indication that the cover-up was for the purposes of preventing the plaintiff from suing the individual officers, even though at any time he could have sued the city. And under State law, he didn't need to identify the officers. All he had to do was make a claim against the city, saying that he had been injured as a result of the actions of the Los Angeles Police Department officers, and under respondeat superior, he would have been able to proceed against the city. But it's different. In the 1983 case? You could bring that as supplemental causes of action. Bring the 1983 and then also ask the federal court to hear the State causes of action at the same time. That's not at all unusual. But there's a difference between suing an entity and suing the individuals. You can't get punitive damages from the city. That's true. But I would argue, as I did in my brief, that the plaintiff doesn't have any kind of constitutional right to seek punitive damages. Punitive damages are not compensation. They're merely a way of punishing and deterring the defendant. If the only thing that a plaintiff has been denied access to court on is punitive damages, I would argue that that is not a constitutional deprivation. Going back to the substance, I think the cover-up, if you could prove a cover-up, you would also have to prove that the intent of the cover-up was to deprive the plaintiff of his ability to proceed in a significant and meaningful manner in court. And just preventing the identity of the specific officers would not have prevented that in any meaningful way. Well, that's not really true. Because if you name the wrong people, if you name the person who has not violated your constitutional rights, then you don't have a claim against the city. If there's been no constitutional violation by an individual officer, there's no constitutional violation by the city. So that's not true. But you can show there's been a constitutional violation by an officer. And in the 1983 case, you'd have to prove the Minnell custom practice and policy. And under state court, state law, you wouldn't even have to do that. You'd have respondeat superior. You cannot prove there was, if he had the wrong officers and those officers did nothing to violate his civil rights, his cause of action is lost against the city. I would disagree. There is case law, and I'm sorry that I don't have the cases at the tip of my tongue. But if you can show that your constitutional rights have been violated by the city of Los Angeles, by a person in a Los Angeles PD uniform clearly acting in the scope and authority as a Los Angeles police department officer, even if you don't have that officer's name, and you can show that that was done pursuant to a policy practice and custom of the city of Los Angeles, you'd still be able to prove that the city of Los Angeles did not violate the civil rights of the city of Los Angeles.  I'm going to change to a slightly different aspect of this. The young woman, I think her name is Peyton, that the gentleman's client helped away from the area. He knew her name and everything from the beginning, did he not? Yes. And this action was filed according to this in-chambers order, the discovery order. This is ER 54 at SEC. So it was filed on December 31. I'm sorry, the demonstration occurred February 15, 2003. He filed his complaint, I'm sorry, the request for the discovery cutoff occurred almost two years later. At that point, this is January 31, 2005, at that point, is it correct that he had not taken the deposition of Ms. Peyton? That's correct. And that goes to what I think the other issue is here, which is the causation issue. Yes, it's true that the district court judge found in August or September that up until then, the plaintiff had acted diligently in discovering the incorrect names of the metro officers. And she knew what the correct names were, correct? Didn't they find out at her actual deposition that she knew? Actually, that was discovered at the deposition of one of the incorrectly named officers. They never did take the deposition of the young woman because she had gone a year into her home. What was the date when the plaintiff knew the correct names? That was in January of, oh, whatever the cutoff date was. Was that 2005, I believe? Okay. But it was before the cutoff date, right? I believe it was after the cutoff date. Okay. Not only was it after the cutoff date, but you stipulated that they could add people, didn't you, notwithstanding the cutoff date? Or you stipulated that, what did you stipulate to? The city agreed to jointly make the motion to extend the cutoff date, but the court denied it. And for some reason, inexplicably denied that, even though you both agreed to that. Correct. But I would argue, again, that there was, there had been shown no due diligence because once the, although they may have shown the complaint for a year after they, or I'm sorry, two years before they filed the complaint and a year after they filed the complaint, they had photographs of everything that had happened. The photographs were apparently readily, could be readily used to identify the officers, because as soon as they finally did hold a deposition and show somebody the picture, they said, oh, yes, that's Sergeant Diaz. And yet they made no attempt at any time to find out that information. It's not, it couldn't, and to say that, well, some of the information we got made us think that, well, it must have been Metro officers, so we just named absolutely every Metro officer who was there that day, and that was enough. We didn't have to make any attempt to find out who the actual specific officers were. And then it turns out that they had the wrong group altogether. I'd argue that that's not diligence. Okay, thank you very much. I thought you really used up your time. We'll give you 30 seconds if you would keep it to 30 seconds, please. My client knew Clara Payton's name because they were both in the squad car together. It turns out she was a juvenile. The city refused to disclose the information because she was a juvenile. We made a motion to get information. We couldn't get access to her because it turns out she was in Europe. And I only saw the report of her arrest because I was taking the deposition of this Metro officer in January 13th of 2006. And I read her report, and her report fits with what my client says, completely contradicting the arrest report of my client. So you're saying neither you nor your client knew of the existence of this young woman, Horton, before you could get the information until 2006? We knew her name. We had no way of reaching her. I couldn't get her information out of the criminal index because it turns out she was a juvenile. It was all confidential information, and the city wouldn't turn it over to me. And your client did not get the information from her at the time? All he got was her name because they were in the squad car together, and that was it. And I named the Metro officers because they produced only one report that named officers at the location where my client was arrested. And so I named those officers, and it looked like I had the right officers. There were no other reports produced, and then I took the deposition of Sergeant Lean. He's an African-American male in his early 30s. He can't be this gray-haired sergeant. Thank you very much. Ms. Berger, thank you. The case argued is submitted. Omega v. Woodford is submitted at this time. Next case is 07-55368, Omega v. Costco Wholesale. Each side will have 15 minutes.
judges: Silverman, Rawlinson, Smith